By the Court. Slosson, J.
In reading the covenant in question, especially in the light thrown upon it by the conversation between the plaintiff and Colgate, one of the parties to it, before the instrument was in fact executed, it is -not difficult to determine what were the motives which induced the parties to enter into the contract, and what was their real intention in so doing. The possible appropriation of the vacant lots to purposes which might prove an annoyance or injury to the premises on Twenty-first street, was the inducement or motive to the arrangement, and the prevention of such an appropriation was the object which the owners of those buildings (the parties to the agreement of the first part) intended to secure. They accordingly provided in their agreement with the plaintiff, that the vacant lots in ques-' tion when purchased by the plaintiff, and also the westerly lot adjoining, then owned by him, should be improved by the erection of buildings thereon, of a class equal, in appearance, to their own, and covering the entire front of the lots, and so constructed as to be ineligible for any trade or occupation likely to be offensive or injurious to their own property.
The instrument does not, in terms, designate any particular occupation as offensive or injurious, except tenement houses, but as that particular is followed by the general clause in question, it is manifest that the parties understood each other, as excluding all modes of occupation which would have the effect to injure the value of the property of the owners on 21st street—the buildings to be erected were not only, within the spirit and true meaning of the agreement, not to be built for such offensive purposes, but they were to be so constructed as to be “ ineligible” therefor; the *182 instrument thus guarding, as much as possible, against the possibility of the appropriation of the premises to any such use.
It may even be conceded (though I do not so concede) that the covenant is complied with, on the part of the plaintiff, in so far as the stipulation to cover the entire front of the vacant lots is concerned, but this would not answer the whole condition of the Stipulation.
By constructing a carriage-way through the whole depth of the westerly building, leading from the street to the yard, the plaintiff has shown an intention to reserve to himself, and has, in fact, reserved to himself the power and facility of connecting with that building, as a means of its greater enjoyment, some other building, to be constructed in the rear; and that he himself considered the carriage-way as a means by which the premises might be converted into a nuisance, is evident, from the fact, that, when remonstrated with for having constructed it, he threatened, that, if the parties to the agreement did not pay him what they had stipulated, “he would put up a factory in the rear, or something else, to annoy them.” To say, in the face of this, that a building so constructed is “ ineligible for any occupation likely to be offensive or injurious” to the owners on 21st street, would be doing violence to the common sense of the whole agreement.
It was not, alone, the construction of buildings in themselves nuisances, which was intended to be guarded against, but the construction of buildings which could be converted into nuisances, or which could be used for purposes “likely” (in the language of the instrument) “ to be offensive or injurious.”
A covenant is not fulfilled, when its intent and spirit are broken, though complied with in the letter. (Com. Dig. Tit. Cov. E. 2; 2 Cowen, p. 786.)
The- obvious and palpable intention of the plaintiff, in constructing this carriage-way, from which there is no entrance into the dwelling-house, and which can only be entered itself from the outside, at either end, was to connect it, at some future time, with a stable, to be erected in the rear, and as an appurtenance to the dwelling-house. This would be, of itself, “ offensive” to the occupants of the houses in 21st street, and, consequently, “ injurious” to the property; but the plaintiff would not be restricted to this particular kind of annoyance, since the passage in question would *183 furnish an equally convenient access to a factory, or other offensive establishment. True, he has not yet erected the nuisance, and may never do it, but he has reserved the means to do so, and has himself created the temptation, and manifested the intention to do it, at least to the extent-of erecting a stable in the rear.
Unless for some such object, the carriage-way would be utterly useless. As already said, there is no entrance into the dwelling-house from it; but it forms a clear and open passage, from front to rear, and is only to be entered from the outside of the building, at either end. Its object is too manifest to allow of a doubt, and we think the construction of this carriage-way a clear violation of the contract.
The order granting a new trial is affirmed, with costs.